875 P.2d 232

**Jane PITTSLEY, Plaintiff–Respondent,**

v.

**Donald HOUSER, dba Hilton Contract Co.; Hilton Contract Carpet Co., a corporation, Defendants–Appellants.**

No. 19889.

Court of Appeals of Idaho.

June 1, 1994.

David A. Frazier, Coeur d'Alene, for appellants.

Charles H. Kimball, Coeur d'Alene, for respondent.

SWANSTROM, Judge, pro tem.

Appellant Donald Houser, doing business as Hilton Contract Carpet Co., appeals from a decision of the district court, acting in its appellate capacity, vacating the judgment and remanding the case to the magistrate for further findings of fact. For the reasons stated below, we also vacate the judgment and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

In September of 1988, Jane Pittsley contracted with Hilton Contract Carpet Co. (Hilton) for the installation of carpet in her home. The total contract price was $4,402. Hilton paid the installers $700 to put the carpet in Pittsley's home. Following installation, Pittsley complained to Hilton that some seams were visible, that gaps appeared, that the carpet did not lay flat in all areas, and that it failed to reach the wall in certain locations. Although Hilton made various attempts to fix the installation, by attempting to stretch the carpet and other methods, Pittsley was not satisfied with the work. Eventually, Pittsley refused any further efforts to fix the carpet. Pittsley initially paid Hilton $3,500 on the contract, but refused to pay the remaining balance of $902.

Pittsley later filed suit, seeking rescission of the contract, return of the $3,500 and incidental damages. Hilton answered and counterclaimed for the balance remaining on the contract. The matter was heard by a magistrate sitting without a jury. The magistrate found that there were defects in the installation and that the carpet had been installed in an unworkmanlike manner. The magistrate also found that there was a lack of evidence on damages. The trial was continued to allow the parties to procure evidence on the amount of damages incurred by Pittsley. Following this continuance, Pittsley did not introduce any further evidence of damages, though witnesses for Hilton estimated repair costs at $250.

Although Pittsley had asked for recission of the contract and a refund of her money, the magistrate determined that recission, as an equitable remedy, was only available when one party committed a breach so material that it destroyed the entire purpose of the contract. Because the only estimate of damages was for $250, the magistrate ruled recission would not be a proper remedy. Instead, the magistrate awarded Pittsley $250 damages plus $150 she expended in moving furniture prior to Hilton's attempt to repair the carpet. On the counterclaim, the magistrate awarded Hilton the $902 remaining on the contract. Additionally, both parties had requested attorney fees in the action. The magistrate determined that both parties had prevailed and therefore awarded both parties their attorney fees.

Following this decision, Pittsley appealed to the district court, claiming that the transaction involved was governed by the Idaho Uniform Commercial Code (UCC), I.C. §§ 28-1-101 through 28-12-532. Pittsley argued that if the UCC had been properly applied, a different result would have been reached. The district court agreed with Pittsley's argument, reversing and remanding the case to the magistrate to make additional findings of fact and to apply the UCC to the transaction. The district court ruled

that because the matter was remanded, the prior award of attorney fees to both parties had to be vacated. The district court also denied Hilton's request for attorney fees on appeal.

Hilton now appeals the decision of the district court. Hilton claims that Pittsley failed to allege or argue the UCC in either her pleadings or at trial. Even if application of the UCC was properly raised, Hilton argues that there were no defects in the goods that were the subject of the transaction, only in the installation, making application of the UCC inappropriate. Hilton also argues that the magistrate did not err in denying recission below, and that the award of attorney fees was proper below. Hilton further challenges the district court's denial of attorney fees on the appeal to the district court and seeks attorney fees on this appeal.

## ANALYSIS

■ We first note that on appeal from an order of the district court reviewing a determination made by the magistrate, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Ireland v. Ireland*, 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993); *Haley v. Clinton*, 123 Idaho 707, 710, 851 P.2d 1003, 1006 (Ct.App. 1993).

[2] In this case, the magistrate's findings of fact have not been challenged on appeal. The issues in dispute only concern the magistrate's application of the law to the facts. On appeal, we freely review the conclusions of law reached below by stating legal rules or principles and applying them to the facts as found. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992); *Matter of Goerig*, 121 Idaho 26, 28, 822 P.2d 545, 547 (Ct.App.1991).

■ The single question upon which this appeal depends is whether the UCC is applicable to the subject transaction.[1] If the underlying transaction involved the sale of "goods," then the UCC would apply. If the transaction did not involve goods, but rather was for services, then application of the UCC would be erroneous.

■ Idaho Code § 28-2-105(1) defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." Although there is little dispute that carpets are "goods," the transaction in this case also involved installation, a service. Such hybrid transactions, involving both goods and services, raise difficult questions about the applicability of the UCC. Two lines of authority have emerged to deal with such situations.

The first line of authority, and the majority position, utilizes the "predominant factor" test. The Ninth Circuit, applying the Idaho Uniform Commercial Code to the subject transaction, restated the predominant factor test as:

> The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

*United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 871 (9th Cir.1986) *cert. denied* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987), *citing Bonebrake v. Cox*, 499 F.2d 951 (8th Cir.1974); *see also* Sonja A. Soehnel, Annotation, *Applicability of UCC Article 2 to Mixed Contracts for Sale of Goods and Services*, 5 A.L.R.4th 501 (1981). This test essentially involves consideration of the contract in its entirety, applying the UCC to the entire contract or not at all.

1. Appellant argues that because application of the UCC was not alleged or argued below, it cannot now be raised on appeal. The UCC, however, is a specific body of law applicable to transactions in goods. It is not, in itself, a cause of action or grounds for relief. Once a party sets forth facts that indicate a transaction in goods is involved, the UCC is the applicable law. Its application need not be specifically pled in order for it to govern a transaction. Nor must its applicability be pled below in order for an appellate court to apply it to a case on review. *See e.g., A & G Constr. Co., Inc. v. Reid Bros. Logging Co., Inc.*, 547 P.2d 1207, 1211 n. 1 (Alaska 1976).

The second line of authority, which Hilton urges us to adopt, allows the contract to be severed into different parts, applying the UCC to the goods involved in the contract, but not to the nongoods involved, including services as well as other nongoods assets and property. Thus, an action focusing on defects or problems with the goods themselves would be covered by the UCC, while a suit based on the service provided or some other nongoods aspect would not be covered by the UCC. This position was advanced by the Tenth Circuit Court of Appeals in *Foster v. Colorado Radio Corp.*, 381 F.2d 222 (10th Cir.1967), which involved the sale of a radio station. The court in *Foster* held that, although there was a single contract for the purchase of a radio station, the UCC applied only to the actual goods that were covered under the contract.[2] Thus, the court applied different analyses and remedies to two different aspects of the same contract.

We believe the predominant factor test is the more prudent rule. Severing contracts into various parts, attempting to label each as goods or nongoods and applying different law to each separate part clearly contravenes the UCC's declared purpose "to simplify, clarify and modernize the law governing commercial transactions." I.C. § 28–1–102(2)(a). As the Supreme Court of Tennessee suggested in *Hudson v. Town & Country True Value Hardware, Inc.*, 666 S.W.2d 51 (Tenn. 1984), such a rule would, in many contexts, present "difficult and in some instances insurmountable problems of proof in segregating assets and determining their respective values at the time of the original contract and at the time of resale, in order to apply two different measures of damages." *Id.* at 54.

█ Applying the predominant factor test to the case before us, we conclude that the UCC was applicable to the subject transaction. The record indicates that the contract between the parties called for "165 yds Masterpiece #2122—Installed" for a price of $4319.50. There was an additional charge for removing the existing carpet. The record indicates that Hilton paid the installers $700 for the work done in laying Pittsley's carpet. It appears that Pittsley entered into this contract for the purpose of obtaining carpet of a certain quality and color. It does not appear that the installation, either who would provide it or the nature of the work, was a factor in inducing Pittsley to choose Hilton as the carpet supplier. On these facts, we conclude that the sale of the carpet was the predominant factor in the contract, with the installation being merely incidental to the purchase. Therefore, in failing to consider the UCC, the magistrate did not apply the correct legal principles to the facts as found. We must therefore vacate the judgment and remand for further findings of fact and application of the UCC to the subject transaction.

On remand, the magistrate may consider such issues as whether the carpet was properly rejected under I.C. § 28–2–602 or whether the actions of Pittsley constituted acceptance under I.C. § 28–2–606. If the goods were accepted, the magistrate may consider if the acceptance could have been revoked under I.C. § 28–2–608. The magistrate may then consider the various remedies that are available under the UCC and any other provisions of the code that the court deems applicable.

█ As for attorney fees, because we are vacating the judgment, we must also set aside the award of attorney fees to both sides. Likewise, no attorney fees should have been awarded at the district court level or on this appeal. Such an award may be appropriate on remand, depending upon the magistrate's determination of the prevailing party and any other consideration applicable to an award of fees. Costs are awarded to the respondent, Pittsley, on this appeal.

WALTERS, C.J., and CAREY, J. pro tem, concur.

---

2. The *Foster* court attempted to distinguish *Epstein v. Giannattasio*, 25 Conn.Supp. 109, 197 A.2d 342 (1963), a case which applied the predominant factor test, by stating that *Epstein* dealt with the services/goods distinction while *Foster* dealt with the goods/nongoods assets distinction. We do not believe this analysis affects the severability rule advanced by the remainder of the case, however.